IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FREDERICK DOUGLASS HAYNES, III AND DEBRA PEEK-HAYNES, | § § § § | |
| *Plaintiffs*, | § | CAUSE NUMBER: _____ |
| v. | § § | |
| UNITED AIRLINES, INC., | § § | |
| *Defendant.* | § | JURY DEMANDED |

### PLAINTIFFS' ORIGINAL COMPLAINT AND JURY DEMAND

COME NOW Plaintiffs Frederick Douglass Haynes, III and Debra Peek-Haynes (collectively, "Plaintiffs") complaining of United Airlines, Inc. ("Defendant") and for cause of action would respectfully show the Court as follows:

## I.
### PARTIES

1. Plaintiff Frederick D. Haynes, III is an individual who resides in Dallas County, Texas. Plaintiff Debra Peek-Haynes is an individual who also resides in Dallas County, Texas.

2. Defendant United Airlines, Inc., ("United") upon information and belief, is, and was at all relevant times, a Delaware corporation operating as a common carrier airline with its principal place of business at 233 South Wacker Drive, Chicago, IL. United is authorized to do, and does, business, throughout the State of Texas and it may be served through its Registered Agent—The Prentice-Hall Corporation System, Inc., 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

## II.
### JURISDICTION AND VENUE

3. Personal jurisdiction is proper in this Court since United's contacts with Texas arise from, or are directly related to, the cause of action and United's contacts with Texas and in this

1

District, even if unrelated to the cause of action, are continuous, systematic, and substantial. The Court has subject matter jurisdiction under 28 U.S.C. §1332 because (i) there is complete diversity of citizenship between the parties as Plaintiffs are residents of Texas and Defendant is incorporated in a state other than Texas and (ii) the amount in controversy exceeds the jurisdictional requirement exclusive of interest and costs.

4. Venue is proper in the Northern District of Texas because all or a substantial part of the events or omissions giving rise to this claim occurred in this District.

### III.
### FACTUAL ALLEGATIONS

5. Plaintiffs reallege and incorporate by reference the allegations set forth in all preceding paragraphs as if set forth fully and reiterated here in their entirety.

6. Defendant United is a commercial air carrier and owes the highest duty of care to its passengers to ensure safe carriage aboard those flights that it operates.

7. It is of the utmost importance that commercial air carriers adhere to the highest standards of care to ensure that passengers are not subjected to any dangers that could induce an in-flight emergency or worse an air disaster.

8. Members of the public who engage in commercial air travel place the ultimate trust of their lives and safety to carriers such as United and rely upon the carrier's good will, representations of dedications to safety, and apparent expertise over the airworthiness of their products and propriety of their air-related services.

9. On or about June 25, 2019, while at his residence in Dallas County, Plaintiff purchased a ticket from United Airlines in the amount of $532.30. With that ticket, Plaintiff Rev. Dr. Haynes was scheduled to travel on June 29, 2019 from New York-LaGuardia Airport to

Houston Texas on June 29, 2019 to serve as a closing speaker and special guest at one of the country's largest networking conferences.

10. Through United's contractual agreement with Plaintiff Rev. Dr. Haynes, United was obligated to provide air carrier services that would get Plaintiff Rev. Dr. Haynes from New York-LaGuardia Airport to Houston Intercontinental Airport, then back to DFW Airport.

11. Rev. Dr. Haynes relied on United's representations and warranties and entrusted his safety to United as he was completely unaware of the dangerous condition plaguing the Aircraft's instrumentalities; a risk that he never would have accepted had it been disclosed to him.

12. On the morning of June 29, 2019, United Airlines Flight 2098 ("Flight 2098") lifted off from New York-LaGuardia Airport with 128 passengers and 5 crew, bound for Houston Intercontinental Airport in Houston, Texas.

13. Upon information and belief, for several minutes after takeoff the Aircraft did not get much altitude and circled around northern New Jersey.

14. Soon after liftoff, the crew of the Airbus A319-100, registration N837UA, (the "Aircraft") declared an emergency due to issues that included hydraulic brake problems and damaged tires.

15. Eventually, the crew diverted the flight to Newark Liberty Airport, where it made an emergency landing.

16. The mechanical failures and need to make an emergency trip diversion caused unusual turbulence and the environment exacerbated passengers' panic where many feared for their lives and others began using their cell phones to report and record the danger that appeared to be occurring.

17. Plaintiff and, upon information and belief, other passengers, reasonably feared for their life as a result of the shambled state of the Aircraft, starting at 10,000 feet in altitude, and lasting several minutes.

18. The Aircraft made a hard or high-speed landing at Newark's Liberty Airport, during which time the Aircraft suffered major damage as its left main gear axle was grinded into the asphalt, as the two left main tires were clearly unusable for landing.

19. This image was captured by a photographer, depicting the above state of affairs of one of the Aircraft's wheel wells from the ground view:



20. After the crew informed passengers that there was smoke within the Aircraft and the possibility of a fire, passengers and crew were forced to deplane on one of the runways, using deployed slides after landing.

21. At the request of the United crew, Plaintiff and other passengers physically assisted and helped carry elderly passengers from the wrecked aircraft to buses and/or one of the terminals, exacerbating the physical injuries to Plaintiffs and others.

22. Plaintiff, as well as, upon information and belief, other passengers, suffered physical symptoms as a result of this intense experience, including: nausea, tachycardia, shaking, symptoms of shock, and following the flight, insomnia.

23. Despite the dangerous takeoff and landing, passengers disembarked only to be encountered by a team of people actually or ostensibly working on behalf of United whose questions and treatment of passengers revealed a blatant failure to account for the shock that these innocent victims, including Plaintiff, were experiencing.

24. Upon information and belief, two tires blew out upon takeoff, creating friction in the wheel well and resulting in smoke in the wheel well.

25. Preliminary results from an NTSB investigation into this incident indicated that it appears that hydraulic system failures led to the smoke in the Aircraft and emergency landing.

26. Upon information and belief, United was aware of an inadequate inspection and/or faulty equipment that, along with additional reasons to be developed in discovery, caused the hydraulic system and tire failures that resulted in damages to Plaintiffs.

27. It is possible to inspect brakes, tires and the hydraulic system for potential failures like what occurred on June 29, 2019 before an aircraft is cleared to takeoff and in fact, the NTBS

and other regulatory bodies mandate that all planes undergo a thorough mechanical inspection before it is cleared to takeoff.

28. Upon information and belief, United has had good reason to perform such inspections before this incident.

29. For instance, on June 15, 2019, United Airlines Flight 627 from Denver to Newark made a similar hard landing at the same airport, skidding off a runway. As a result, the aircraft's fuselage and airframe had extensive damage and, similar to the incident in the underlying matter, tires were blown out as well.

30. Subsequent to the extremely hard landing of Flight 627 on June 15, 2019, United failed to take reasonable measures and failed to identify and correct the root cause of the failure of the landing mechanisms and the failure to ensure that a future failure would not occur despite being on clear notice that such a failure could and did result in another dangerously hard landing.

31. Despite this threat to the safety of United's passengers and aircraft, and despite the snail's pace investigation into the root cause of Flight 627's landing, United provided no warnings to the flying public, provided no warnings to its actual customers, and in particular, provided no warnings to Plaintiffs.

32. Instead of providing necessary warnings or otherwise instituting enhanced pre-trip inspections and removing dangerous equipment from service, United continued to operate commercial air carrier services despite knowing that its aircraft, including the subject Aircraft, were operating with unresolved and undisclosed unsafe conditions.

33. United's failure to ensure that what happened on June 15, 2019 and, upon information and belief, other occasions did not happen again is a stunning failure of reasonable safety practices by any standard.

34.     Rev. Dr. Haynes is a prophetic pastor, passionate leader, social activist, eloquent orator, author and educator engaged in preaching the gospel of Jesus Christ, and fighting against injustices.  He has devoted his life to economic justice and empowerment in under-served communities and touching and transforming the lives of the disenfranchised. For the past 38 years, Rev. Dr. Haynes has served as a visionary and innovative senior pastor of Friendship-West Baptist Church in Dallas, Texas.  As a result of his energetic personality and the causes he fights, Rev. Dr. Haynes is often invited to speak at events in the United States and internationally.

35.     Because of the incident with the Aircraft, Rev. Dr. Haynes did not make it to Houston where he was the closing speaker and where he stood to receive substantial compensation from the speaking engagement and sales of books he has authored.  Instead, due to the nature of his injuries and emotional state, Rev. Dr. Haynes returned home to Dallas many hours later.

36.     Since that day, Rev. Dr. Haynes has had to undergo medical and counselling treatment, all stemming from the June 29, 2019, incident.

37.     In addition, due to the physical ailments and emotional stress caused by the June 29, 2019, incident Rev. Dr. Haynes curtailed his travel and has had to reduce his speaking engagements drastically, which has negatively impacted his ability to derive income from the speaking engagements and sales of his books.

### IV.
### CAUSES OF ACTION

**Count I:   Negligence and Gross Negligence**

38.     Plaintiffs reallege and incorporate by reference the allegations set forth in all preceding paragraphs as if set forth fully and reiterated here in their entirety.

39.     As a common carrier and/or commercial airline carrier, United owed a duty of care to its passengers, including Plaintiff, to ensure that the aircraft and equipment that it uses in its

fleet are airworthy, that all maintenance and inspections necessary to ensure the continuing airworthiness of its fleet is performed in a professional and workmanlike manner; owed a duty to discontinue services and/or warn its passengers of any dangers associated with its aircraft so that passengers can make informed judgments about purchasing services from United or other carriers; and owed duties to perform any obligations that it assumed in a professional and reasonably prudent manner in the context of the circumstances presented.

40. As an air carrier, United also owed regulatory duties to ensure that the aircrafts and equipment it uses in its fleet are airworthy, that all maintenance and inspections necessary to ensure the continuing airworthiness of its fleet is performed in a professional and workmanlike manner, and owed a duty to discontinue services and/or warn its passengers of any dangers associated with its aircraft or equipment so that customers may make informed judgments about purchasing services from United or other carriers. The breaches of such regulatory duties constitute negligence.

41. United had a duty to provide the highest degree of care for its passengers, whose very lives were at risk when they boarded the Aircraft.

42. United had a duty to reasonably monitor, inspect, test, service, maintain and repair the Aircraft and equipment used with it, as well as to keep its Aircraft and equipment reasonably safe for its passengers, or to remove from service all aircraft and equipment that were not reasonably safe.

43. In addition to the above, by its actions and omissions, United also breached its duty and was negligent, grossly negligent and/or acted with malice in at least the following regards:

   a. Failing to properly inspect the subject Aircraft for signs of impending catastrophic failure of its hydraulic system components;

b. Failing to properly inspect the tire and wheel features to ensure that they were suitable, in a condition, and/or appropriate to prevent a hydraulic system failure;

c. Failing to properly train employees and agents how to conduct proper inspections that would have revealed the presence of the impending failure of the hydraulics system and wheel components prior to takeoff;

d. Failing to properly maintain the Aircraft to prevent catastrophic failure of its hydraulic components;

e. Failing to properly inspect the Aircraft pre-flight so as to identify components exhibiting signs of impending failure;

f. Failing to maintain software in the Aircraft that would alert the crew or ground maintenance of signs of impending failure of hydraulics or wheel components;

g. Failure to timely replace the hydraulics system and wheel components that were clearly showing signs of an impending failure;

h. Failing to follow the recommended/mandatory inspection procedures designed to identify impending failure of aircraft takeoff and landing components;

i. Failing to follow the recommended/mandatory inspection procedures designed to identify impending failure in the Aircraft's takeoff and landing features to ensure that they were suitable, in a condition, and/or appropriate to prevent hydraulic system failures;

j. Failing to take appropriate and reasonable corrective measures after the inflight emergency that befell Flight 627 to ensure that similar hydraulic system failures would not occur;

k. Failing to take appropriate and reasonable measures to ensure that the hydraulic systems used in its fleet, including the subject Aircraft, were free of design and/or manufacturing defects rendering it unsafe for flight;

l. Failing to accelerate the recommended/mandatory inspection procedures designed to identify impending hydraulic system failures in light of the gravity of the resulting harm;

m. Failing to take the necessary precautionary measures to remove the subject Aircraft and hydraulics systems from service, which had an unsafe condition that could cause a dangerous landing;

n. Failing to ground those aircraft equipped with hydraulic systems and potentially defective wheel components such as the subject Aircraft;

  o. Failing to warn Plaintiff that the subject Aircraft and its component parts contained an unsafe condition and/or design or manufacturing defects that had not been rectified after prior malfunctions;

  p. Failing to fulfill regulatory duties to report product defects, service problems, or other matters that affect the safety of flight to regulatory authorities;

  q. Failing to properly train its team of employees and/or agents responsible to contend with passengers who were in shock after experiencing an in-flight emergency and therefore exacerbating trauma and shock;

  r. Failing to provide the highest degree of care for its passengers whose lives were at risk; and to provide even a reasonable degree of care for its passengers; and

  s. Failing to act reasonably for other reasons to be developed in discovery of this action.

44. As a direct and proximate result of the negligence of United and its employees, Plaintiff suffered, and will continue to suffer, pecuniary losses, mental, emotional and psychological injuries, including post-traumatic stress disorder, and physical injuries and resulting expenses, losses and damages, the amount of which is undetermined at this time.

**Count II: Negligence *Per Se***

45. Plaintiffs reallege and incorporate by reference the allegations set forth in all preceding paragraphs as if set forth fully and reiterated here in their entirety.

46. United was required by federal law to properly inspect and maintain its aircraft and related equipment such that it could safely operate.

47. United failed to abide by 14 C.F.R. § 91.8 ("Civil aircraft airworthiness"), § 91.13 ("Careless or reckless operation"), and upon information and belief, inspection of United's inspection and maintenance records will uncover numerous other failures that led to the harm that occurred to Plaintiffs.

48. United's failure to follow the law resulted in the type of harm that this law sought to prevent: unsafe conditions with or on an airplane resulting in injury to persons or property.

49. United is liable to Plaintiffs for damages as a result of United's negligence *per se*.

**Count III:   Breach of Contract (Including Express and Implied Warranties)**

50. United is a commercial air carrier, offers its services to the public for a profit, and holds itself out to the public as a company that a has a commitment to safety and has allegedly adopted the highest safety standards to ensure its passenger's safety.

51. Plaintiff contracted with United as a fare paying passenger for safe carriage and transport from his origination to his destination and back home.

52. Included within that contract was United's obligation to provide an aircraft that was in a condition safe for flight. Failure to provide a safe aircraft constitutes a breach of the agreement.

53. Also included within that contract was United's obligation to get Plaintiff to Houston Intercontinental Airport on June 29, 2019. He never made it. This constitutes a breach of the agreement and warranties.

54. Plaintiff relied upon the representations, good will, warranties, and contractual obligations that United promised it would perform.

55. Plaintiff also relied on the representations that the Aircraft and its component parts were safe, reliable and of a quality that rendered them suitable for their intended use. However, the Aircraft and parts proved to be unsafe, defective, and unusable for their intended purpose and United refused to properly repair or replace these items.

56. In addition to the above, by its actions and omissions, United breached its contractual obligations and warranties in at least the following regards:

a. Failing to properly inspect the subject Aircraft for signs of impending catastrophic failure of its hydraulic system components;

b. Failing to properly inspect the tire and wheel features to ensure that they were suitable, in a condition, and/or appropriate to prevent a hydraulic system failure;

c. Failing to properly train employees and agents how to conduct proper inspections that would have revealed the presence of the impending failure of the hydraulics system prior to takeoff;

d. Failing to properly maintain the Aircraft to prevent catastrophic failure of its hydraulic components;

e. Failing to properly inspect the Aircraft pre-flight so as to identify components exhibiting signs of impending failure;

f. Failing to maintain software in the Aircraft that would alert the crew or ground maintenance of signs of impending failure of hydraulics or wheel components;

g. Failure to timely replace the hydraulics system and wheel components that were clearly showing signs of an impending failure;

h. Failing to follow the recommended/mandatory inspection procedures designed to identify impending failure of aircraft takeoff and landing components;

i. Failing to follow the recommended/mandatory inspection procedures designed to identify impending failure in the Aircraft's takeoff and landing features to ensure that they were suitable, in a condition, and/or appropriate to prevent hydraulic system failures;

j. Failing to take appropriate and reasonable corrective measures after the inflight emergency that befell Flight 627 to ensure that similar hydraulic system failures would not occur;

k. Failing to take appropriate and reasonable measures to ensure that the hydraulic systems used in its fleet, including the subject Aircraft, were free of design and/or manufacturing defects rendering it unsafe for flight;

l. Failing to accelerate the recommended/mandatory inspection procedures designed to identify impending hydraulic system failures in light of the gravity of the resulting harm;

m. Failing to take the necessary precautionary measures to remove the subject Aircraft and hydraulics systems from service, which had an unsafe condition that could cause a dangerous landing;

      n.      Failing to ground those aircraft equipped with hydraulic systems and potentially defective wheel components such as the subject Aircraft;

      o.      Failing to warn Plaintiff that the subject Aircraft and its component parts contained an unsafe condition and/or design or manufacturing defects that had not been rectified after prior malfunctions;

      p.      Failing to fulfill regulatory duties to report product defects, service problems, or other matters that affect the safety of flight to regulatory authorities;

      q.      Failing to properly train its team of employees and/or agents responsible to contend with passengers who were in shock after experiencing an in-flight emergency and therefore exacerbating trauma and shock;

      r.      Failing to provide the highest degree of care for its passengers whose lives were at risk; and to provide even a reasonable degree of care for its passengers;

      s.      Failing to get Plaintiff to Houston on June 29, 2019; and

      t.      Failing to act reasonably for reasons to be developed in discovery of this action.

57. As a direct and proximate result of the foregoing breaches by United and its employees, Plaintiffs suffered, and will continue to suffer, pecuniary losses, mental, emotional and psychological injuries, and physical injuries and resulting expenses, losses and damages, the amount of which is undetermined at this time.

**Count IV: Loss of Consortium**

58. Plaintiffs reallege and incorporate by reference the allegations set forth in all preceding paragraphs as if set forth fully and reiterated here in their entirety.

59. Plaintiffs Rev. Dr. Haynes and Debra Peek-Haynes are, and at all relevant times were, married.

60. Plaintiff Rev. Dr. Haynes has suffered, and will continue to suffer, loss of consortium, including loss of the emotional or intangible elements of the marital relationship, due to the loss or reduction of his spouse's affection, solace, comfort, companionship, society,

assistance, and sexual relations necessary to a successful marriage as well as any other physical, emotional and psychological harm inflicted upon the martial relationship as a result of the United Flight 2098 incident.

61. Plaintiff Debra Peek-Haynes has suffered, and will continue to suffer, loss of consortium, including loss of the emotional or intangible elements of the marital relationship, due to the loss or reduction of her spouse's affection, solace, comfort, companionship, society, assistance, and sexual relations necessary to a successful marriage as well as any other physical, emotional and psychological harm inflicted upon the martial relationship as a result of the United Flight 2098 incident.

62. United's actions and/or omissions as alleged herein were the direct, proximate, legal cause of the loss of consortium suffered by Plaintiffs.

63. Plaintiffs are entitled to an award for past and future loss of consortium, including loss of martial companionship, society, affection, support, services, assistance, conjugal fellowship, and other physical, emotional and psychological harm inflicted upon the martial relationship as a result of the United Flight 2098 incident, and other damages according to law.

**Count V: Damages**

64. Plaintiffs reallege and incorporate by reference the allegations set forth in all preceding paragraphs as if set forth fully and reiterated here in their entirety.

65. As a direct and proximate cause of the traumatic events that befell Flight 2098, Plaintiff Rev. Dr. Haynes suffered and continues to suffer, severe personal injuries including but not limited to anxiety, emotional distress, depression, personal injuries to his body including the physical manifestations of the emotional and mental trauma he experienced and continues to suffer, and seeks recovery for all damages including but not limited to, damages for loss of earnings, loss of future earning capacity, financial damages, mental, emotional, and physical pain

and suffering, loss of enjoyment of life, loss of ability to perform and experience the usual activities of life, past and future counseling, medical and health care and expenses together with damages for physical pain and suffering, and emotional anguish, terror and fright. Both Plaintiffs continue to suffer loss of consortium.

66. Plaintiffs further seek all other available compensatory damages, as well as punitive damages against United for its reckless misconduct and conscious disregard for Plaintiffs' safety, health, life and wellbeing.

67. United's acts and/or omissions were a proximate cause of the following injuries suffered by Plaintiffs, for which Plaintiffs seek recovery through this Complaint:

   a. Actual damages;
   b. Lost prior and future earnings;
   c. Past, present, and future medical expenses for physical, emotional and mental health;
   d. Diminished earning power or earning capacity in the past and in the future;
   e. For loss of consortium suffered by Plaintiffs Frederick D. Haynes and Debra Peek-Haynes;
   f. Damages awarded for the purpose of compensating Plaintiff for physical pain and suffering, mental or emotional pain or anguish, loss of consortium, physical impairment, loss of companionship and society, inconvenience, injury to reputation, and all other nonpecuniary losses of any kind in the past and the future;
   g. All other damages naturally and/or incidentally flowing from Defendants' conduct and/or omissions;
   h. Attorneys' fees and costs of court;
   i. Exemplary and punitive damages;
   j. Prejudgment interest; and
   k. Post judgment interest.

68. Plaintiffs seek unliquidated damages in an amount that is within the jurisdictional limits of the court.

**Count VI:   Exemplary Damages**

69. Plaintiffs reallege and incorporate by reference the allegations set forth in all preceding paragraphs as if set forth fully and reiterated here in their entirety.

70. United's conduct giving rise to the breaches of duties described above are especially egregious and aggravated because they were committed with knowledge that the subject aircraft had not been inspected properly and contained a potentially dangerous condition.

71. The facts detailed herein show that United had actual knowledge of a faulty inspection process for the Aircraft and an unsafe condition with the Aircraft's hydraulic system and wheel components that had not been remedied since the last known failure.

72. Despite knowing of the inadequate inspection procedures and the dangerous condition of the Aircraft, United risked the lives of more than a hundred innocent passengers, including Plaintiff, by electing not to discontinue service with the use of aircraft and equipment impacted by these omissions and defects or otherwise electing not to inform passengers of the nature of the existing dangerous inspection and condition of equipment.

73. United knew or should have known that the evaluation of the inspection procedures, components and software involved in previous and similar hard landings was moving at a slow pace and that even though sufficient time had passed to make corrections, United failed to take reasonable measures to identify and correct the root cause of the fatigue failure of the landing mechanisms and the failure to ensure that a future failure would not occur despite being on clear notice that such a failure could and did result in another dangerous hard landing.

74. Rather than protect the safety of Plaintiff and those who also were fare paying customers, United's misconduct placed profits and business over the safety of its customers as it continued to operate these aircraft even though there was confirmation that an unsafe condition existed, which had not been corrected since previous similar failures.

75.     Given the gravity of harm that can occur to passengers in a commercial aircraft, which could involve injuries such as what befell Flight 2098 on June 29, 2019, and much worse, United acted with malice, recklessness, and with disregard for the rights of others including Plaintiff.

76.     United should not have allowed the defective or inadequate instrumentalities to have been placed into the sky. This and other conduct constitutes gross negligence, for which exemplary or punitive damages should be awarded.

77.     Plaintiff, therefore, seeks exemplary damages for injuries caused by United's gross negligence under Texas Civil Practice & Remedies Code section 41.003(a)(3), as defined by Section 41.001(11). Plaintiff also seeks exemplary damages as a result of United's willful acts or omissions or gross neglect, as provided in Texas Constitution and Texas Civil Practice & Remedies Code. Finally, Plaintiff seeks exemplary damages under any and all other statutes, acts, or law providing for such damages.

**Count VII:   Attorneys' Fees**

78.     Plaintiffs reallege and incorporate by reference the allegations set forth in all preceding paragraphs as if set forth fully and reiterated here in their entirety.

79.     As a result of United's acts and omissions, Plaintiffs have had to retain counsel and therefore seek reimbursement for reasonable attorneys' fees, and accompanying expenses, as authorized by applicable law and in equity.

### JURY DEMAND

80.     Plaintiffs demand a trial by jury as to all claims and all issues.

### PRAYER

Wherefore, Premises Considered, Plaintiffs pray that Defendant United Airlines, Inc. be cited to appear and answer herein and, upon final trial hereof, that Plaintiffs have and recover from

Defendant all allowable damages, exemplary damages, pre and post-judgment interest, costs of court, attorney's fees, and such other and further relief, both general and special, at law and in equity, to which they may be justly entitled.

**Dated the 23rd day of June 2021.**

Respectfully Submitted,

*/s/ Aubrey "Nick" Pittman*
AUBREY "NICK" PITTMAN
State Bar No. 16049750

**THE PITTMAN LAW FIRM, P.C.**
100 Crescent Court, Suite 700
Dallas, Texas 75201-2112
214-459-3454 – Telephone
214-853-5912 – Fax
pittman@thepittmanlawfirm.com